NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 24 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RONGFANG WANG, | No. 17-72237 |
| Petitioner, | Agency No. A099-896-713 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2020[**]
Pasadena, California

Before: WARDLAW, COOK,[***] and HUNSAKER, Circuit Judges.

Rongfang Wang, a native and citizen of the People's Republic of China,

petitions for review of the Board of Immigration Appeals' (BIA) decision

affirming the Immigration Judge's (IJ) denial of her application for asylum,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Deborah L. Cook, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

withholding of removal, and Convention Against Torture (CAT) relief. We have jurisdiction under 8 U.S.C. § 1252. We deny the petition.

1. Substantial evidence supports the agency's adverse credibility determination. We uphold an adverse credibility determination so long as at least one ground is supported by substantial evidence. *Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011). The agency must "provide specific and cogent reasons in support of an adverse credibility determination" and must consider "the petitioner's explanation" along with "other record evidence that sheds light on whether there is in fact an inconsistency at all." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010) (quoting *Malkandi v. Holder*, 576 F.3d 906, 917 (9th Cir. 2009)).

Wang testified that she feared for her safety if she returned to China because she had been targeted by the police for organizing protests against the government after her home was demolished. But the BIA properly noted a meaningful inconsistency between Wang's testimony and her supporting documentation: many of the documents she submitted, including her household registration and ID card, identified her old home as her address even after the date she claims her home was demolished. This discrepancy is not trivial but instead goes to the heart of Wang's asylum claim. *See Shrestha*, 590 F.3d at 1046–47 (explaining that inconsistency at the heart of a claim carries great weight). Wang was given an opportunity to

explain this inconsistency, *see Zhi v. Holder*, 751 F.3d 1088, 1093 (9th Cir. 2014), and attempted to do so by testifying that the nature and costs of the household registration system prevented her address from being changed within the system unless she took certain actions, such as purchasing property or paying to get the address changed. Because Wang's explanation was unsupported by the record, the IJ requested additional corroboration, such as background evidence or laws regarding the registration system. *See Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011) (explaining that the IJ is not required to accept even "plausible" explanations unless the record compels otherwise).

The evidence Wang provided to corroborate her story does not compel the conclusion that Wang's testimony was credible. *See* 8 U.S.C. § 1252(b)(4)(B). Wang did not submit any expert testimony, regulations, or other authority to support her description of the registration system. Instead, she offered a letter from her husband, which simply repeated Wang's story; copies of National ID cards for her husband and son that still listed the demolished address eight years later; and photos depicting either other homes or a new building with a similar but distinct address on the street where Wang's home once existed. While some photos may depict a large building that encompasses Wang's former address, no evidence in the record affirmatively corroborates that possibility. The agency considered this evidence, *see Shrestha*, 590 F.3d at 1044, and properly concluded that it did not

compel the conclusion that Wang's testimony was credible.

The BIA also properly relied on Wang's omission from her asylum application of a serious injury she alleges was caused by persecution. Wang's asylum application claims that she was kicked by police and fell to the ground, was arrested and tortured in detention, and describes her injuries in some detail. But at her asylum hearing, Wang testified to a serious injury omitted from her application: that when she was knocked to the ground by police, she lost her front teeth and bled profusely. When asked to explain her omission, Wang said only that she had not been asked about that injury. Injuries from persecution are not mere details, and "[i]t was not unreasonable for the [agency] to be suspicious as to why" Wang only mentioned this injury for the first time at her hearing. *Zamanov*, 649 F.3d at 974. Again, "the record does not compel the finding that the [agency's] unwillingness to believe this explanation, in light of the importance of the omitted incident[] to [her] asylum claim, was erroneous." *Id.*

Because Wang was the only witness in support of her asylum and withholding claims, her claims depended on her credibility. Because we conclude that the adverse credibility determination was supported by substantial evidence, the BIA properly dismissed her claims for asylum and denial of withholding of removal.

2. Substantial evidence also supports the agency's denial of Wang's CAT

4

claim.  Wang's CAT claim was based on the same testimony that the agency properly found not credible, and no other evidence in the record compels the conclusion that it is more likely than not that Wang would be tortured if she were removed to China.  *See Shrestha*, 590 F.3d at 1048–49.

**PETITION DENIED.**